OPINION OF THE COURT
Sidney L. Mitchell, J.
Plaintiff sues to recover the sum of $1,356.89. Plaintiff is a highly regarded and well-qualified plastic surgeon. He gave surgical treatment to an auto accident victim and elected to obtain recompense as a health provider seeking direct payment pursuant to section 678 of the Insurance Law.
Standard technique was used to remove splinters from the victim’s face. (Called foreign bodies in the operating record.) Additionally, the plaintiff, because of his high degree of skill, employed a technique styled “Advance Flap Closure” to close lacerations to the victim’s eyelids. This technique was conceded to be the best treatment for the injury as it would result in reduced facial scarring. Other techniques would not reduce facial scarring, although they would provide an adequate treatment.
On or about November 12, 1982, the plaintiff opted for direct payment pursuant to section 678 of/the Insurance Law and billed the defendant for the services.
*348 The bill was coded in conformity with the no-fault requirement. The plaintiff billed for two lacerations via code 14160 and one laceration via code 14060. He also billed for a surgical consultation and two X-ray examinations under codes 70160 and 70150, as well as under code 20680 for foreign body removal.
The defendant forwarded plaintiff’s bill and operating report to their consultant who recommended payment of the sum of $2,145.53, leaving the balance sued for in this plenary suit.
The defendant disallowed $398.85 for code 14060 and $558.33 for one code 14160. The sums of $287.17 and $48.12 as well as 20 cents were deducted because of what the defendant styled as “charges for procedures included in another procedure performed on the same day.”
The defendant further contends that the disallowance is supported by the rule on page 14 of the “Schedule of Medical Fees” which in effect, provides for a total payment not to exceed two times the highest fee where unrelated procedures are performed at the same time.
There is no dispute as to the services rendered or the quality thereof. The dispute centers on the billing technique and the contention of the plaintiff that he is entitled to payment as billed.
In opting to proceed under the no-fault statute, the plaintiff, of necessity, must conform to the requirement of section 678 of the Insurance Law. This section authorizes a health provider to receive fees, as per the schedules prepared and established by the Workers’ Compensation Board for industrial accidents, except that the provider may obtain an excess charge where the insurer, or in this case, the court can on the facts established on trial, justify an excess charge.
Subdivision 2 of section 678 of the Insurance Law provides for the promulgation of rules and regulations including the establishment of schedules where the Workers’ Compensation Board has failed to propose same. Subdivision 3 of section 678 of the Insurance Law expressly limits the health provider to only those payments authorized in subdivision 1 or 2 of section 678 of the Insurance law and no others.
The “Schedule of Medical Fees” established by the Workers’ Compensation Board as amended to July 1, 1982, provides the basic means of recompense for physicians as health providers. The schedule was created by the cooperative effort of the New York Medical Society, the insurance industry and the Workers’ Compensation Board administrators of the State. This effort has *349 resulted in the adoption of the aforesaid schedule which is most comprehensive in establishing schedules of fees. Indeed, the paucity of litigation concerning the schedule suggests that disputes are usually decided by arbitration rather than by litigation.
In this case, the plaintiff contends that the court should authorize a charge in excess of the scheduled fee on a finding that an unusual procedure or unique procedure justifies the charge. (11 NYCRR 68.5.)
The defendant’s exhibit A, consisting of the operative record, suggests that the injuries were treated by the indicated surgical procedure known as “Advance Flap Closure.” The glass splinters in the forehead were removed by routine procedures. The report states that the prognosis is good and that there were no complications in the treatment.
On page 15 of the schedule, fees are established for adjacent tissue transfer or rearrangement using the advance flap technique. The inclusion of this technique in this schedule suggests .that the procedure, albeit one requiring above-average skill to perform, is nevertheless considered a standard treatment by the fee schedule. The schedule allows a greater fee for this method than for alternative methods of treatment.
The plaintiff argues in his memorandum of law that because he employed the best methods and skills to reduce or minimize scarring rather than other less-advanced techniques, he is entitled to an additional fee.
The court finds this argument untenable. As a matter of public policy, a professional health provider is bound to furnish his best service in the treatment of patients entrusted to his care. To suggest that the type of surgical technique employed to treat the injured is conditioned on the receipt of a bonus payment for top quality treatment is unacceptable.
Once the provider accepts a no-fault patient, he is bound by the statute as well as by the public policy of the State to furnish health services to the full extent of his capabilities. No other course can be deemed acceptable. The plaintiff is bound by this policy, and should not be heard to complain. (Insurance Law, § 678, subd 3.)
In the case of Deto Lab. v Allstate Ins. Co. (117 Misc 2d 1027), the Appellate Term, First Department, held that the Superintendent has broad powers to make regulations to enforce the statutory schedule.
*350 The court relies on Ostrer v Schenck (41 NY2d 782), to support the conclusion that absent irrational or unreasonableness in the regulation, the regulation should be Upheld.
In the instant case, there is not a scintilla of evidence to support a contention that the regulation is irrational or unreasonable. A reading of the fee schedule makes clear that its creators adopted a schedule that health providers could live with. It is clear, thorough and comprehensive in its approach to the fee schedule.
The schedule provides payment as per the diagnosed defect as the basis on which a provider’s fee is to be measured and not the created defect caused in the course of applying the treatment opted for by the plaintiff provider.
In a civil case, the plaintiff has the burden of proving his case by a preponderance of the evidence. (Kennealy v Westchester Elec. Ry. Co., 86 App Div 293.)
Here the plaintiff has not met this burden on both counts. He has failed to sustain the burden of establishing facts which could permit the court to find that he is entitled to extra fees. He has also failed to establish by any credible evidence that the statute and the regulations are irrational or unreasonable.
Accordingly, it is the decision of the court after trial without jury that judgment be granted in favor of the defendant.